(73 App. Div. 434.)

## BERNHEIMER v. SCHMID.

(Supreme Court, Appellate Division, First Department. June 13, 1902.)

1. PARTNERSHIPS — SUIT FOR DISSOLUTION—PARTITION—APPEAL—FAILURE TO ASK PARTITION IN LOWER COURT.

When the complaint in a suit for dissolution of a partnership contains no prayer for partition of the realty owned by the members of the firm, and the case is tried solely on the theory that it is for dissolution only, plaintiff making no claim for partition, it is too late on appeal to contend for the first time that the suit can be sustained as one for dissolution and also for partition.

2. SAME—EQUITABLE CONVERSION OF REALTY—NECESSITY FOR APPLICATION OF RULE.

The rule of equitable conversion of lands belonging to partners into firm assets will be applied only where it is necessary to adjust firm obligations.

Appeal from special term, New York county.

Suit by Simon Bernheimer against Josephine Schmid for dissolution of a partnership. From an interlocutory order appointing a receiver, and ordering an accounting and liquidation, plaintiff appeals. Affirmed.

See 69 N. Y. Supp. 659, 73 N. Y. Supp. 767, 75 N. Y. Supp. 899.

This action is brought for the dissolution of the copartnership existing between plaintiff and defendant, for an accounting, and for a sale of the partnership property. It appears that for upwards of 40 years the Lion Brewery, located on the westerly side of Columbus avenue, between 107th and 108th streets, with certain property in the adjoining block on the east, in the city of New York, has been owned and operated by successive copartnership firms under the name of Bernheimer & Schmid. In the year 1870, and for some time prior thereto, the firm was composed of Emanuel Bernheimer and Joseph Schmid. Up to that time the real estate occupied by the firm was owned by Simon Bernheimer, brother to Emanuel, and uncle to the plaintiff. Josephine Schmid became an owner of an undivided half of said realty, subject to a purchase-money mortgage of $160,000. Written articles of copartnership were executed by the said partners under date of December 1, 1870, to continue to December 1, 1878. By these articles it was recited, among other things, that "Joseph Schmid and Simon Bernheimer, the owner of the other undivided half of the said real property, have become tenants in common thereof"; and it was stipulated that Emanuel should pay the rent for the half owned by Simon; also that all buildings and improvements made by the firm "should be absolutely taken and treated as part of said real estate." In 1878 the plaintiff and August Schmid, the son of Joseph Schmid, succeeded to the firm of Bernheimer & Schmid. A written lease of the half of the premises belonging to plaintiff's uncle was taken, which provided, among other things, "that all buildings, improvements, and structures, including the engines and appurtenances, and other property and fixtures, now upon the said premises, and hereby demised, and all such as may be erected, whether new or in substitution for those now

existing thereon as hereinafter mentioned, and all the engines, boilers, apparatus, and appurtenances belonging or in any wise appertaining thereto, shall at the expiration of the term hereby demised, or other sooner determination thereof, be taken and considered as a part of the premises hereby demised, and shall not be taken away, removed, or in any way disposed of by the parties of the second part [tenants] without the consent in writing of the party of the first part." This lease was for five years, but in 1883 it was extended until 1893. The partnership articles, dated December 1, 1878, between the plaintiff and August Schmid, provided, among other things, that plaintiff should pay the rent, $11,200 per annum, for his uncle's half of the premises, and August Schmid, having acquired title to his father's half subject to the $160,000 mortgage, should pay the interest on said mortgage, amounting to the same sum of $11,200, at 7 per cent.,—the then legal rate; also that plaintiff and his successors should not be "entitled to any equitable interest in such buildings and improvements on account of their being built for partnership purposes and with partnership funds, but all such buildings and improvements shall be absolutely taken and treated as part of said real estate." By the extension of the lease of the uncle's undivided half of the realty from 1883 to 1893, the annual rent was increased $1,600. At the time the partnership articles were extended the time of the payment of the mortgage on Schmid's half was likewise extended to 1893, and the interest reduced to 6 per cent.,—an annual reduction of $1,600. It is claimed by appellant that the partnership articles, which are not before us, provided that Schmid should pay the $1,600 increase of rent. August Schmid died in 1889, and the defendant succeeded him in the firm. The articles of copartnership between plaintiff and defendant for the period between 1889 to 1893 provided that the defendant should pay the rent due the estate of her husband, and $1,600 of the rent due Simon Bernheimer. The articles in force when this action was brought bear date December 1, 1893. They were to continue for two years, but in 1895 were renewed for two years more. Since 1897 the partnership has existed at will. The plaintiff purchased his uncle's half of the premises in 1893 for the sum of $450,000. The defendant covenanted to acquire in her individual right the title to her husband's half as soon as her children became of age, and she perfected her title to the brewery block in 1895, and to the remainder in 1898. The articles further provide, among other things, that the copartnership should become lessees of the premises during the copartnership term, operate the brewery thereon, pay as rent therefor to the plaintiff $27,000 per annum, and to the defendant, as executrix and trustee under her husband's will, the same amount, and pay the taxes, assessments, and water rates, and keep the property insured; that if the buildings and fixtures should be so far destroyed by fire or other calamity as to prevent the brewing of beer, and the parties did not mutually agree to rebuild or repair, or if the right to continue the business be taken from the parties by act of law, then, unless the parties otherwise mutually agreed, the copartnership should thereupon become dissolved; that, upon the dissolution by limitation or otherwise, the business of the firm should be liquidated and settled with all reasonable diligence, the assets converted into money, the debts paid, the capital standing upon the books to the credit of the respective parties returned to each so far as it remains intact, and the balance, if any, after paying interest on the capital, divided equally between the parties. The rent above reserved amounts to 6 per cent. of the value of the property, according to the price paid by plaintiff for his half. In 1898 some of the property in the block adjoining the brewery proper was sold, and thereafter the rent paid each copartner was $21,660 per annum. This was after the copartnership had come to exist at will. It is also provided in the articles that each copartner shall draw out 6 per cent. on his capital invested in the business, as shown on the books of the firm, and that the balance shall be divided equally. The realty was not entered on the books of the firm, and the rent was regularly entered in the lease account, as it had been previous to the ownership of the fee by the copartners. It appears that, at the time plaintiff was negotiating for the purchase of his uncle's interest,

it was proposed to abandon the present site and build a modern brewery on the water front, and that plaintiff and his brother Max E. Bernheimer, superintendent for the firm, favored doing so, but that defendant, after considering the matter, withheld her consent. Max E. Bernheimer testified that, in his opinion, enough could be saved on operating expenses to more than pay the interest on the cost of locating elsewhere. After the differences resulting in this action had arisen, plaintiff wrote defendant, at Tarrytown, N. Y., offering to give or take $2,000,000 for her or his interest in the property, respectively, as a going concern, including the realty, and requested an answer within five days. It does not appear whether or not she replied. There are no partnership debts, except for current expenses, which are more than could be paid by funds on hand, and no incumbrances on the premises.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Wm. A. Jenner, for appellant.

John E. Parsons, Charles F. Brown, and Roger Foster, for respondent.

LAUGHLIN, J. The trial court has held that the real estate did not become copartnership property, but that it is held by the parties as tenants in common, and should not be sold in this action. The correctness of this decision is challenged by the appellant, and that is the only question upon the appeal. Both parties ask in their respective pleadings for a dissolution of the firm, and the liquidation of its assets. It is distinctly alleged that the real estate has, by the acts of the parties in dealing with it, become partnership property. The plaintiff prays for the appointment of a receiver, and asks that the entire property, including good will, trade-marks, choses in action, and real estate, be sold in bulk, as a going concern. The defendant pleaded that the real estate was held by the parties as tenants in common, and she contends that the copartnership assets, only, should be liquidated, except that she asks that the good will and trade-marks be not sold, but that both parties be permitted to avail themselves of the same. Upon the trial the defendant moved for the appointment of a receiver. The plaintiff claims that the copartnership assets, consisting of buildings, beer casks and kegs, horses, harness, and wagons, pumps, ice machines, machinery, hose, utensils, and furniture, of the value of more than $1,000,000, will be largely sacrificed by a sale separate and apart from the realty and good will, and that unless the property is sold in bulk, as a going concern, a loss aggregating millions will result. The assets of the firm exceed $4,000,000. The defendant claims that the loss on buildings, which appear on the books of the firm at a value of $324,-615.08, will be offset by a large gain from new buildings, and the rise in real estate values of recent years in the vicinity of the present site, and that the other property will yield as much, if not more, upon liquidation, if sold apart from the land, as if sold with it. As has been seen, there were no rights of creditors involved; nor is there any equity in favor of either party, as against the other, to be adjusted. The real estate was acquired by the parties as tenants in common, and there is no sufficient evidence to indicate that the parties ever

considered it the property of the firm. The copartnership articles either expressly provided or fairly contemplated that the lands and all erections thereon were to be and remain the property of the parties in their individual right.

The appellant now contends that the action can be sustained as one for dissolution, and also for partition. The complaint was not framed in partition, but, as has been seen, upon the theory that the realty has become copartnership property. The action was tried as a suit for dissolution, and voluminous evidence was introduced by the plaintiff in an effort to show an equitable conversion of the realty into partnership assets. It does not appear from the record that the claim was made upon the trial that the action could be maintained as for partition, and the relief sought granted on that theory. Apparently, the plaintiff's only claim was in accordance with his complaint that the land had been treated and dealt with as partnership property, in such a way as to create an equitable conversion thereof. The complaint does not pray for partition. Bernheimer may have a wife, and, if so, there would be a defect of parties. There has been no reference to determine liens, and there was no proof, by search, of their nonexistence, as required in partition. There is no allegation that the parties did not own other lands in common. On the contrary, it appears that they did own other lands in common, both here and in New Jersey, but which were acquired and held for partnership purposes. It is sought to have these lands sold in this action, but they are not described by metes or bounds, or with common certainty, as is required in partition actions. Again, partition actions are triable by a jury. If the complaint was both for dissolution and partition, the defendant might have demurred, and raised the objection that the causes of action were improperly joined, on the ground that they did not arise out of the same transaction, and were not connected with the same subject of action. In the state of this record, it is unnecessary for us to determine whether both causes of action could be joined, if objection were raised, and it was raised in this case by the answer. See Briges v. Sperry, 95 U. S. 401, 24 L. Ed. 390. If the claim had been made below, the defendant would have been entitled to a jury trial. It is too late now to present that question.

No evidence, other than the plaintiff's offer to buy or sell, was presented to show that there was any market value for the brewery as a going concern, or that there was any probability that third parties would bid on the property if sold in bulk. The special term held, in effect, that, regardless of gain or loss to the parties themselves, the court would not compel the sale of their individual freehold estate with the partnership assets. A receiver was appointed, and an interlocutory judgment, decreeing an accounting and liquidation of all the copartnership affairs, was accordingly directed. In the absence of partnership liabilities to creditors or to members of the firm, there is no reason for the application of the rule of equitable conversion. That rule is only applied where it is necessary to adjust obligations of the firm. In other cases, lands still remain

realty, and descend to the heirs of the copartners. The decision and interlocutory judgment did not expressly determine whether the title to the buildings is in the parties as tenants in common, but, as has been seen, the title to the buildings follows the title to the land, and that is the effect of the decision and judgment.

No question is presented with reference to those provisions of the decision and judgment which authorize the receiver to continue the business until final judgment.

The judgment should be affirmed, with costs. All concur.